# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

TREMAINE TAYLOR                         CIVIL ACTION NO. 12-03057

VS.

                                        JUDGE DONALD E. WALTER

BURL CAIN, WARDEN                       MAG. JUDGE KAREN L. HAYES

### REPORT AND RECOMMENDATION

On December 7, 2012, *pro se* Petitioner Tremaine Taylor filed the instant application for

writ of *habeas corpus* attacking his 2005 conviction for attempted second degree murder, armed

robbery, and carjacking in the 4th Judicial District Court, Ouachita Parish.  [doc. # 1].  This

matter has been referred to the undersigned for review, report, and recommendation in

accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.  For

reasons assigned below, it is recommended that the Petition [doc. # 1] be **DENIED**.

### *Statement of the Case*

The underlying facts in this case have been set forth by the Louisiana Second Circuit

Court of Appeal as follows:

> On March 2, 2003, Willie Lamar Reed was walking home from a friend's house on Luther
> Street in Monroe when Defendant approached him and asked for a cigarette. When Reed told
> Defendant that he did not have enough cigarettes to give him one, Defendant grabbed Reed
> by the throat. Reed jerked away from Defendant and, at the same time, saw something shiny
> coming up toward him. Suddenly, Reed saw a flash and felt a gunfire blast go within two to
> three inches of his face; Reed testified that fragments from the blast actually hit his face.
> Reed ran to a neighbor's house and called the police. Reed went back outside and saw
> Defendant, who then said, "Mot Reed, I see you, bitch." Defendant then fired another shot
> at Reed, and Reed ran back inside the house. Reed testified that he could see Defendant
> walking down the sidewalk, that Defendant was continuing to discharge the firearm and that
> Defendant took a car from someone in a nearby driveway while still armed with the handgun.
> He further testified that, when he saw the police arrive, he

told them what happened, including the facts that there was no argument between him and Defendant and that Defendant had no reason for doing what he did. Reed maintained that he believed Defendant would have shot him in the forehead if he had not jerked back.

Donnie McGee testified that he was visiting a friend on Luther Street that night and that he thought he heard gunshots as he got out of his car. McGee testified that he went inside and continued hearing gunshots, but that he went back outside because he remembered leaving his keys inside the car. While standing outside next to his 1996 Buick Century and talking to his friend, Defendant walked up and got inside of McGee's car. McGee told Defendant to get out of his car, but Defendant started the engine. McGee reached inside the car to retrieve the keys and try to get Defendant out of his car, but Defendant then pointed a gun at his chest. McGee backed away, and Defendant drove away. McGee testified that he did not give Defendant permission to take his car.

Soon thereafter, Vincent J. Newton, Jr., was driving his 1999 Lincoln Navigator on Jackson Street when he encountered Defendant. Newton noticed Defendant because he thought Defendant was driving "crazy" and following him as Newton took a friend to her home on Mississippi Street. Newton saw Defendant pull into a nearby driveway and, after the friend got out of his vehicle, Defendant knocked on Newton's window and pulled open the car door. Newton saw that Defendant had a silver gun pointed at him, and Defendant told Newton to give up the truck. Defendant then made Newton give him all of his valuables, which included a ring, a cell phone and some loose cash. Defendant drove away in Newton's Lincoln Navigator, and Newton then flagged down a Monroe Police patrol car that was passing by at the time.

Monroe Police Officers Roy Cox and Tommy Crowson approached Defendant inside the Winnsboro Grocery and Gas because he matched the description issued in a BOLO ("Be On The Lookout"). Defendant initially refused their request to step outside, so they handcuffed him and forcefully took him outside. When searching Defendant's person, they found a cell phone and a ring. The Lincoln Navigator was in the parking lot with a silver and black 9mm Smith and Wesson handgun inside. Monroe Police Officer Lisa Quillar drove Newton to Winnsboro Grocery and Gas, where Newton identified the vehicle, ring and cell phone as being his. In the meantime, bullet casings were recovered from the crime scenes at Luther Street, which were sent to the North Louisiana Crime Laboratory for analysis. Michael Stelly, an expert in firearms identification with the North Louisiana Crime Laboratory, testified that the bullet cartridges recovered from the crime scene on Luther Street were fired from the handgun recovered at Winnsboro Grocery and Gas. Monroe Police Officer Roderick Jackson, who was the detective on the case, testified that the crime scenes on Luther Street were approximately four miles from the Winnsboro Grocery and Gas.

During opening and closing statements at trial, counsel for Defendant did not dispute the State's assertion of what Defendant did on March 2, 2003; however, he argued that

Defendant was not responsible for his actions because, earlier in the day, he had been smoking a marijuana cigarette that was, unbeknownst to him, laced with phencyclidine ("PCP"), which caused him to commit those crimes. Officer Jackson testified that Defendant was eventually taken to the hospital for evaluation because he was behaving in a strange manner and throwing things at the Monroe Police Department. Medical records from the hospital indicated that a toxicology test was performed on Defendant's urine and that it tested positive for PCP and marijuana. In support of his claim that he involuntarily ingested the PCP, Defendant presented the testimony of Clyde Bernard Mitchell. Mitchell, who was incarcerated at the time of trial, testified that he is Defendant's friend and that he was at a barbeque with Defendant on that day. He further explained that he gave Defendant a marijuana cigarette laced with PCP while Defendant was cooking. Mitchell testified that he did not tell Defendant about the PCP and that he did not know it would affect him that way.

On cross-examination, Mitchell testified that he and others smoked this same cigarette, but that neither he nor anyone else who had smoked that cigarette tried to kill, rob or carjack anyone else that day. When asked why he did not give this information to police earlier, Mitchell testified that he did not want to get a reputation for being a "rat" by talking to police. Warren Brown, an investigator with the District Attorney's office, testified that he interviewed Mitchell before the trial and that Mitchell told him that Defendant and everyone at the barbeque knew that the marijuana cigarette was laced with PCP.

As previously stated, based upon the evidence at trial, the jury convicted Defendant of attempted second degree murder, armed robbery and two counts of carjacking.

*State v. Taylor*, 968 So. 2d 1135, 1139-41 (La. App. 2 Cir. 2007).

On April 11, 2003, Petitioner was charged by bill of information with two counts of carjacking in violation of La. R.S. 14:64.2, one count of armed robbery in violation of La. R.S. 14:64, and one count of attempted second degree murder in violation of La. R.S. 14:27 and 14:30.1(1). [doc. # 13-1, p. 48]. On October 27, 2005, Petitioner was convicted by a jury on all counts. [doc. #13-3, p. 50]. The trial judge imposed sentences totaling 90 years without parole: forty-five (45) years at hard labor without benefit of probation, parole, or suspension of sentence on the attempted second degree murder charge; seventy (70) years at hard labor without benefit of probation, parole, or suspension of sentence on the armed robbery charge; and twenty (20) years on each count of carjacking. *Id.* On August 30, 2005, retained counsel, Anthony Hollis,

3

moved to withdraw as counsel of record. [doc. # 13-3, p. 44].

Thereafter, retained counsel, Louis G. Scott, appealed. [doc. # 13-3, p. 21]. On October 24, 2007, the Second Circuit Court of Appeal affirmed Petitioner's convictions. [doc. # 13-7, p. 1]. On November 10, 2008, the Louisiana Supreme Court denied Petitioner's writ application. [doc. # 13-7, p. 42].

On September 2, 2008, Petitioner filed an application for Post-Conviction Relief ("PCR") in the 4th Judicial District Court. [doc. # 13-7, p. 43]. He argued seven claims for relief: (1) improper exclusion of expert testimony; (2) insufficient evidence to prove attempted second degree murder; (3) prosecutorial misconduct; (4) improper jury instruction; (5) double jeopardy; (6) trial counsel improperly waived his right to testify; and (7) ineffective assistance of trial and appellate counsel. [doc. # 13-7, p. 50]. On January 11, 2012, the state trial court denied his PCR. [doc. # 13-8, p. 30]. The court denied claims 3-7 on their merits and denied claims 1 and 2 as having been previously addressed and ruled on by the appellate court. *Id.* His writ application was denied by the Second Circuit on April 5, 2012. [doc. # 13-8, p. 76]. His writ application to the Louisiana Supreme Court was denied on October 8, 2012. [doc. # 13-8, p. 116].

Petitioner filed the instant petition on December 7, 2012, requesting relief for the seven claims set forth above. [doc. # 1]. The matter is now before the undersigned.

## LAW AND ANALYSIS

### I.    Standard of Review – 28 U.S.C. § 2254

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs *habeas corpus* relief. The AEDPA limits how a federal court may consider *habeas* claims.

4

After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).  An inmate must show that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362 (2000)).  "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 740.  Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts.  Federal courts presume such determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## II.    Petitioner's Claims

A. <u>Claim One: Exclusion of Expert Testimony</u>

In Petitioner's first claim, he contends that the trial court improperly infringed upon his Sixth Amendment right to present a defense by excluding the expert testimony of Dr. Donald Harvey Marks, PhD.  Petitioner alleges that Dr. Marks's testimony was admissible under La. C. E. art. 702 in that it was necessary to help the jury understand that his actions indicated that he was intoxicated.  On that basis, Petitioner alleges that the testimony was essential in order for him to establish lack of specific intent.

i. <u>Background</u>

At trial, Dr. Marks testified that he currently worked at a hepatitis clinic, that many of his patients were current or former drug users, and that this gave him experience with problems of drug use and addiction.  [doc. # 13-5, p. 92].  Dr. Marks was formerly an associate director of research for Hoffman LaRoche Pharmaceuticals  and the director of clinical research at Aventis Pasteur Pharmaceuticals. [doc. # 13-6, p. 2].  He testified that he worked as a medical legal consultant and has testified as an expert witness in cases similar to the present one. [doc. # 13-5, p. 92].  Dr. Marks also testified that, while working in the emergency room during his medical residency, he had seen a few cases of PCP intoxication and that he had reviewed the subject and how to treat it. [doc. # 13-6, p. 5, 6].

Dr. Marks further testified that he had been qualified to testify as an expert regarding the adverse effects of drug use in Texas, New York, New Jersey, and Pennsylvania.  *Id.* at 2.  On cross-examination, Dr. Marks testified that, while his experience with the pharmaceutical companies did not include evaluating those taking PCP, he did evaluate patients who experienced adverse psychiatric effects from anti-malarial medication and adverse central nervous system

6

effects from antibiotic medication.  *Id.* at 3.  Dr. Marks further stated that his only experience

with PCP intoxication had been two patients he saw in the emergency room and that it had been

over fifteen years ago.  *Id.*  The State maintained its objection in regard to Dr. Marks being

accepted as an expert, and the trial court sustained the objection.

On redirect, Dr. Marks testified that the two patients he purportedly observed with PCP

intoxication had been brought to the emergency room by police officers who said the patients had

been found with PCP in their possession, but said that the manic state that they were in made it

difficult to question them or to perform a physical examination.  *Id.* at 6.  Dr. Marks explained

that these patients had symptoms associated with use of a PCP-like drug.  *Id.*  On re-cross

examination, Dr. Marks acknowledged that he was unsure as to whether there had been some

kind of "chemical confirmation" that those patients were intoxicated with PCP and that there

were other possible medical causes for the behavior the patients exhibited.  *Id.* at 7.  After

considering the arguments of counsel, the trial court refused to qualify Dr. Marks as an expert

witness for the following reasons:

> The doctor's testimony was clear that he remembers two cases of what he thought was PCP. That his memory . . . the best he can remember, it was fifteen years ago. I can relate because doctors have tons of patients. And he does research and he's testified he's done research reference vaccine evaluations and others and adverse effects of clinical drugs, being for pharmaceutical companies, not for illegal drugs. And he testified that based on hearsay testimony, what the officers said, he believed them to be under PCP and that he believes that there may have been clinical confirmation. No way he would know because it was too long ago. The best he could remember. And so basically he thinks that he can recall that but he does not know for sure. He testified uncontradicted that the exhibit of behavior that he saw could have been from several things. That . . . He did not testify that he did a screening that narrowed it down absent the clinical confirmation to PCP. Based on that the Court finds that his testimony is not material and that he does not meet the Daubert analysis to testify in this trial. I'm going to exclude it.

*Id.* at 10.

La. C.E. art. 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."  In reviewing an expert's qualifications, the "trial judge is vested with wide discretion in determining the competence of an expert witness.  Competence of an expert witness is a question of fact to be determined within the sound discretion of the trial judge; his rulings on the qualifications of expert witnesses will not be disturbed in the absence of manifest error." *State v. Stucke*, 419 So. 2d 939, 944 (La. 1982) (citing *State v. Drew*, 360 So. 2d 500 (La. 1978)).

ii. <u>Analysis</u>

The Due Process Clause does not guarantee the right to introduce all relevant evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996).  A defendant does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.  *Id.*  The exclusion of evidence does not violate the Due Process Clause unless "it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id.* at 43 (quoting *Patterson v. N.Y.*, 432 U.S. 197, 201-02 (1977).

One of the fundamental rules that may be violated by the erroneous exclusion of defense evidence is the Sixth Amendment right to present a defense.  *Chambers v. Miss.*, 410 U.S. 284, 294 (1973); *Washington v. Tex.*, 388 U.S. 14, 18-19 (1967).  However, the constitutional right to present a defense is not absolute.  *See, e.g., U.S. v. Hernandez*, 962 F.2d 1152, 1161 (5th Cir. 1992) (holding that a defendant's Sixth Amendment right of compulsory process to obtain witnesses in his favor must yield to a witness's Fifth Amendment privilege against self-

incrimination).  Even relevant and reliable evidence can be excluded when the state interest is strong.  *See, e.g., Washington*, 388 U.S. at 23 (attorney-client privilege).  A state law justification for exclusion of evidence does not abridge a criminal defendant's right to present a defense unless it is "arbitrary or disproportionate" and "infringe[s] upon a weighty interest of the accused." *U.S. v. Scheffer*, 523 U.S. 303, 308 (1998).

However, the Supreme Court has never held that "a court's exercise of discretion to exclude expert testimony violates a criminal defendant's constitutional right to present relevant evidence." *Moses v. Payne*, 555 F.3d 742, 758-59 (9th Cir. 2009).  Because the Supreme Court has not directly considered this issue, the trial court's discretionary decision–pursuant to La. C.E. art. 702–to exclude expert testimony cannot be contrary to or an unreasonable application of clearly established Supreme Court precedent.  Thus, the decision did not violate Petitioner's constitutional rights.  *See Carey v. Musladin*, 549 U.S. 70, 76-77 (2006) (reasoning that, given the lack of holdings from the Supreme Court on the issue, it cannot be said that the state court unreasonably applied federal law).

Accordingly, the Court finds that the trial court's decision to exclude Dr. Marks's testimony was neither contrary to, nor involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.[1]  Thus, habeas relief

---

[1] Additionally, to the extent that Petitioner argues that the trial court abused its discretion in excluding Dr. Marks's testimony, the undersigned notes that the Supreme Court has repeatedly held that  "federal *habeas corpus* relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984).  Therefore, an alleged violation of state law, in and of itself, does not merit federal *habeas corpus* relief.  As explained by the Fifth Circuit, federal courts "'do not sit as a "super" state supreme court' in [a *habeas corpus*] proceeding to review errors under state law." *Martin v. Wainwright*, 428 F.2d 356, 357 (5th Cir. 1970)); *accord Cronnon v. Ala.*, 587 F.2d 246, 250 (5th Cir. 1979).  A federal court will only grant *habeas corpus* relief based on state

is not warranted and it is recommended that this claim be **DENIED.**

B. Claim Two: Insufficient Evidence to Prove Attempted Second Degree Murder

      For Petitioner's second claim, he argues that the evidence was insufficient to prove the elements of the crime of attempted second degree murder.  Petitioner puts forth two reasons why he did not possess the requisite specific intent to kill.  First, he argues that there was no evidence that he actually pointed the gun at the victim (Mr. Reed).  Second, he argues that his PCP ingestion negated any alleged specific intent.

      When a habeas petitioner asserts that the evidence presented to the trial court was insufficient to support his conviction, the limited question before a federal habeas court is whether the state appellate court's decision to reject that claim was an objectively unreasonable application of the clearly established federal law set out in *Jackson v. Va.*, 443 U.S. 307 (1979). *Williams v. Puckett*, 283 F.3d 272, 278-79 (5th Cir. 2002).  A conviction is based on sufficient evidence if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.  The *Jackson* inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993).  Thus, a conviction may rest on sufficient evidence "even though the facts also support one or more reasonable

---

court's erroneous evidentiary ruling if it results in a "denial of fundamental fairness" under the Fourteenth Amendment Due Process Clause.  *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998) (quoting *Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir. 1983)).  Even assuming the trial court erred, Petitioner has failed to establish that the court's decision was so prejudicial and crucial in his conviction as to render his trial fundamentally unfair.

hypotheses consistent with the defendant's claim of innocence." *Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991).

In the case at bar, the Louisiana appellate court invoked and applied the *Jackson* standard. *Taylor*, 968 So. 2d at 1145.  The court then referenced the definitions relevant to the crime of attempted second degree murder under Louisiana law.  *Id*.  Second degree murder is the killing of a human being when the offender has the specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1).  Although the complete crime of second degree murder can be proved by showing either specific intent to kill or to inflict great bodily harm, the state must prove that the defendant had the specific intent to kill in order to support a conviction for attempted second degree murder.  *State v. Huizar*, 414 So. 2d 741, 746 (La. 1982).

In *State v. Mitchell*, the court stated that the specific intent to kill could be inferred from the circumstances, such as discharging a firearm aimed at a person within close range:

> Specific intent is the state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1); *State v. Ellis*, 677 So. 2d 617 (La. App. 2d Cir. 1996).  As a state of mind, specific intent need not be proved as a fact; it may be inferred from the circumstances and the actions of the defendant.  *State v. Kahey*, 436 So. 2d 475 (La. 1983); *State v. Murray*, 827 So. 2d 488 (La. App. 2d Cir. 2002). The discharge of a firearm at close range and aimed at a person is indicative of a specific intent to kill or inflict great bodily harm upon that person. *State v. Murray*, supra; *State v. Johnson*, 27,522 (La. App. 2d Cir.12/06/95), 665 So.2d 1237. The determination of whether the requisite intent is present is a question for the trier of fact. *Huizar*, 414 So.2d at 751.

*State v. Mitchell*, 889 So. 2d 1257, 1259 (La. App. 2 Cir. 2004).

With regard to Petitioner's first argument, the Louisiana appeals court stated:

> We conclude that the State presented sufficient evidence that Defendant had the specific intent to kill Reed. Reed testified that Defendant grabbed him by the throat, that he saw something shiny coming up toward him as he jerked away from Defendant, that he saw a flash, that he felt a gunfire blast go within two to three inches of his face and that he felt

11

fragments from the blast actually hit his face. Reed testified that after he went back outside, Defendant said, "Mot Reed, I see you, bitch," and fired another shot at him. Reed believed that Defendant would have shot him in the forehead if he had not jerked back. This testimony was evidence that Defendant was aiming the gun at Reed and that he fired the gun at Reed within very close range. Accordingly, we find that the State presented sufficient evidence from which a rational jury could determine that Defendant had the specific intent to kill Reed and that he attempted to do so by firing the handgun at Reed.

*Taylor*, 968 So. 2d at 1146.  With regard to Petitioner's second argument, the appeals court stated:

Even so, the evidence that the intoxication was involuntary or that the intoxication directly caused him to commit these crimes was controverted by the State's evidence. Mitchell testified that Defendant did not know that the marijuana cigarette was laced with PCP. Conversely, Investigator Brown testified that Mitchell told him that Defendant and everyone at the barbeque knew that the marijuana cigarette was laced with PCP. Mitchell's credibility was further challenged by the fact that he was incarcerated at the time of his testimony and by the fact that he did not go to the police with this information. Further, Defendant presented no evidence that the PCP directly caused him to commit these crimes. Rather, on cross-examination, Mitchell testified that he and others smoked this same cigarette, but that neither he nor anyone else who had smoked that cigarette tried to kill, rob or carjack anyone else that day. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part as to issues regarding the question of intoxication. State v. Mitchell, supra, citing State v. Jordan, 31,568 (La.App. 2d Cir.2/24/99), 728 So.2d 954, writ denied, 99-0893 (La.10/8/99), 750 So.2d 177. Defendant did not meet his burden of proving involuntary intoxication because he presented no evidence that the intoxication directly caused him to commit these offenses. Moreover, in light of the contradictory evidence regarding whether the intoxication was involuntary and the lack of evidence regarding whether the intoxication caused Defendant to commit these crimes, a rational jury could properly conclude beyond reasonable doubt that involuntary intoxication was not proven in this case.

*Id.* at 1147.  Overall, the Louisiana appeals court, applying the *Jackson* standard, found that the evidence was sufficient and that Petitioner's claim was without merit.  *Id.*  The undersigned cannot say that the state court's application of *Jackson* was objectively unreasonable in this regard; therefore, it is recommended that Petitioner's second claim be **DENIED**.

C. Claim Three: Prosecutorial Misconduct

In Petitioner's third claim, he argues that the prosecutor, in rebuttal closing argument,

made a prohibited reference to Petitioner's failure to testify at trial.  Petitioner claims that these alleged improper comments constitute reversible error because they violated his right to exercise his Fifth Amendment rights, thereby depriving him of a fair trial.

It is a well established rule that a defendant's decision not to testify at trial may not be commented on during the course of the trial.  *Doyle v. Ohio*, 426 U.S. 610, 617-18 (1976); *U.S. v. Davis*, 609 F.3d 663, 685 (5th Cir. 2010).  However, not all comments touching on a defendant's decision to remain silent run afoul of the Fifth Amendment.  A comment violates the Fifth Amendment if the language used "was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *U.S. v. Rocha*, 916 F.2d 219, 232 (5th Cir. 1990) (quoting *Davis v. U.S.*, 357 F.2d 438, 441 (5th Cir. 1966)).  "The prosecutor's intent is not manifest if there is some other, equally plausible explanation for the remark."  *U.S. v. Grosz*, 76 F.3d 1318, 1326 (5th Cir. 1996).  As for whether a jury would naturally and necessarily construe a remark as a comment on the defendant's failure to testify, "the question is not whether the jury possibly or even probably would view the challenged remark in this manner, but whether the jury necessarily would have done so."  *Id.*  If there is an equally plausible explanation for the remark, the prosecutor's intent is not manifest.  *U.S. v. Collins*, 972 F.2d 1385, 1406 (5th Cir. 1992).

Further, "commenting on the absence of specific evidence in the record does not constitute a comment on the defendant's failure to testify when witnesses other than the defendant could have testified to such information."  *U.S. v. Morrow*, 177 F.3d 272, 300 (5th Cir. 1999).  Along those lines, the government is not prohibited from commenting on the defense's failure to counter or explain the evidence.  *U.S. v. Guzman*, 781 F.2d 428, 432 (5th Cir. 1986).  In

13

fact, "commenting on a failure to call witnesses generally is not an error, unless the comment implicates the defendant's right not to testify." *U.S. v. Wall*, 389 F.3d 457, 474 (5th Cir. 2004).

Here, in closing argument, the defense argued that Petitioner's actions were bizarre.  [doc. # 13-6, p. 24-25].  The focus of the defense's argument was that Petitioner was in a drug-induced stupor that caused him to commit the crimes.  *Id.*  In rebuttal, the prosecutor's argument was as follows:

> The second point is how do we know it's bizarre for Tremaine Taylor.  Did y'all hear any witnesses to talk about how docile Tremaine Taylor is?  How he doesn't do this, doesn't do that?  Did his mom get up and testify, brother and sister?  No.  So we don't know if it's bizarre as to Tremaine Taylor from the witness stand ... that came from the witness stand.

*Id.* at p. 28-29.  Petitioner asserts that the argument constitutes a comment on his failure to testify because only he could tell the jury why his mom, brother, or sister did not testify.  [doc. # 1-1, p. 24].

However, in the context of this case, the prosecutor's remark clearly focused on the defense's failure to explain how Petitioner's behavior constituted a departure from his normal behavior.  The defense squarely raised the issue of his bizarre behavior in his closing argument, and the prosecutor was justified in alerting the jury's attention to the fact that the evidence in support of the proposition that Petitioner's behavior was bizarre was scant.

As a whole, the prosecutor's comment was intended to alert the jury to the dearth of evidence on this issue, and there is no indication of an intent to comment on Petitioner's failure to testify.  Stated differently, the comment was intended to show the jury that the defense failed to support its claim that Petitioner's behavior was bizarre.  The prosecutor had a right to respond to the defense's closing on rebuttal.  Petitioner has also failed to show that the prosecution's

comment was of such character that a jury "naturally and necessarily" took it as a comment on his failure to testify.  As such, the comment was not a constitutionally impermissible reference and did not deprive Petitioner of a fair trial.  Therefore, it is recommended that Petitioner's third claim be **DENIED**.

D. Claim Four: Erroneous Jury Charge

Petitioner next claims that he was deprived of due process of law and his Fifth Amendment right to a jury instruction.  Specifically, Petitioner argues that the trial judge erred by failing to tell the jury that they were to draw no unfavorable inference from his failure to testify.  At trial, the judge instructed the jury that:

> The defendant is presumed to be innocent until each element of the crime necessary to constitute his guilt is proven beyond a reasonable doubt.  The defendant is not required to prove that he is innocent.  Thus, the defendant begins the trial with a clean slate.
>
> * * *
>
> The defendant is not required by law to call any witness or to produce any evidence.  The defendant is not required to testify.  However, if the defendant testifies, his testimony is to be judged in the same manner as that of any other witness.

[doc. # 13-6, p. 33].

It is well settled that improper jury instructions in state criminal trials do not generally provide a basis for federal *habeas* relief.  *Estelle,* 502 U.S. at 71-72.  In order for a jury instruction by a state court to warrant federal *habeas* relief, the petitioner must show not only that the instruction given was erroneous, but also that it resulted in prejudice of a magnitude so severe that his due process right was violated.  *Cupp v. Naughten*, 414 U.S. 141 (1973); *Sullivan v. Blackburn*, 804 F.2d 885 (5th Cir. 1986).

The instruction here was not erroneous.  In *Carter v. Ky.*, 450 U.S. 288, 300 (1981), the

Court held that "a criminal trial judge must give a 'no-adverse-inference' jury instruction when requested by a defendant to do so."  The Supreme Court has long interpreted *Carter* to require the no adverse inference instruction only when the defendant requests it.  *See, e.g., Portuondo v. Agard*, 529 U.S. 61, 67 (2000) ("The defendant's right to hold the prosecution to proving its case without his assistance is not to be impaired by the jury's counting the defendant's silence at trial against him–and upon request the court must instruct the jury to that effect.").  Because Petitioner never requested such an instruction, the trial judge did not err by failing to give such an instruction.  *See U.S. v. Gomez-Olivas*, 897 F.2d 500, 501-02 (10th Cir. 1990) (because court is only required to give "no-adverse-inference" instruction when requested, failure to give unrequested instruction that defendant could not be compelled to testify was not error).

Petitioner also argues that the trial judge should have instructed the jury not to draw any adverse inference from Petitioner's failure to testify because the prosecutor commented on Petitioner's silence.  [doc. # 1-1, p. 30].  Indeed, a trial judge must so instruct the jury if the prosecution comments on the defendant's silence and violates the Fifth Amendment.  *U.S. v. Griffith*, 118 F.3d 318, 325 (5th Cir. 1997).  However, as noted above, the prosecutor did not comment on Petitioner's silence or violate Petitioner's Fifth Amendment right.

In sum, because Petitioner never requested such an instruction and the prosecution did not improperly comment on Petitioner's silence, the instruction was not erroneous.  Thus, the Court need not engage in a prejudice analysis.  Accordingly, the undersigned can find no basis for holding that the trial court's instruction was constitutionally deficient; therefore, it is recommended that Petitioner's fourth claim be **DENIED**.

E. Claim Five: Double Jeopardy

16

Petitioner argues that his convictions for both armed robbery and carjacking violated his rights under the Double Jeopardy Clause.  [doc. #1-1, p. 32].  He essentially suggests that both crimes must be proven by force or intimidation, therefore the use of that same force or intimidation against the same victim punishes him twice for the same conduct.  *Id.* at 34.

The Double Jeopardy Clause of the Fifth Amendment "protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense." *Austin v. Cain*, 660 F.3d 880, 887 (5th Cir. 2011).  In *Blockburger v. U.S.*, 284 U.S. 299 (1932), the Supreme Court established the test for determining whether two statutes constitute the "same offense" for double jeopardy purposes.  The Court found that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 304.

Louisiana defines carjacking as "the intentional taking of a motor vehicle . . . belonging to another person, in the presence of that person, or in the presence of a passenger, or any other person in lawful possession of the motor vehicle, by the use of force or intimidation."  La. R.S. 14:64.2(A).  In contrast, Louisiana defines armed robbery as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon."  La. R.S. 14:64(A).  Applying the *Blockburger* test, Petitioner's convictions were for two separate offenses.  Specifically, a conviction for armed robbery requires proof of a taking while armed with a dangerous weapon–carjacking does not.  Carjacking requires a taking of a motor vehicle–armed robbery does

not.

Accordingly, the elements of the two offenses are not the same; "each requires proof of an additional fact which the other does not." *See Blockburger*, 284 U.S. at 304.  Therefore, Petitioner's convictions for armed robbery and carjacking do not implicate the Double Jeopardy Clause, and it is recommended that his claim on this basis be **DENIED.**

F. Claim Six and Seven: Ineffective Assistance of Counsel

In Petitioner's final claim, he alleges that his trial counsel was ineffective for the following reasons: (1) not allowing him to testify; (2) failing to obtain a qualified expert; (3) failing to investigate and secure the testimony of at least two witnesses who had knowledge that PCP was administered to Petitioner involuntarily; (3) failing to object to improper prejudicial comments made by the prosecution; and (4) failing to file a motion to quash counts 2 and 4 based on double jeopardy grounds.  [doc. # 1-1, p. 37-39; p. 43].  In addition, Petitioner argues that his appellate counsel was ineffective because he failed to argue that his trial attorney was ineffective.  *Id.* at 43.

Ineffective assistance of counsel claims may be considered under 28 U.S.C. § 2254.  *See Clark v. Thaler*, 673 F.3d 410 (5th Cir. 2012).  Substandard advice of counsel rises to a constitutional violation only if the substandard conduct deprives the defendant of his constitutional right to a fair trial or some other constitutional right.  *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984).  To prevail on a claim of ineffective assistance of counsel, a defendant must show both (1) that his counsel's actions fell below an objective standard of reasonableness and (2) that the ineffectiveness of counsel prejudiced him.  *Id.* at 669.  If the defendant does not make a sufficient showing as to one prong of the test, the other prong need not be considered.  *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997).  The prongs of the test need not be analyzed in any particular

18

order.  *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997).

Further, the court's scrutiny is "highly deferential" and the court must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689-90.   "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."  *Virgil v. Dretke*, 446 F.3d 598, 608 (5th Cir. 2006) (quoting *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004).  What is more, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."  *Green v. Johnson*, 160 F.3d 1029, 1042-43 (5th Cir. 1998).

i. Prevention of Petitioner From Testifying

Petitioner alleges that his trial counsel rendered inadequate performance when he prevented Petitioner from testifying after Petitioner expressed his desire to do so.  [doc. # 1-1, p. 37].  More specifically, Petitioner claims that when counsel refused to let him testify, counsel violated his Fifth, Sixth, and Fourteenth Amendment rights.  *Id.*  Petitioner contends that he discussed testifying with counsel and that they agreed prior to trial that he would testify.  *Id.* at 38.  As a result, Petitioner demands an evidentiary hearing to support his allegation that counsel rebuffed his attempt to testify.  *Id.* at 41.

It is true, as Petitioner contends, that the right to testify is found in the Fifth, Sixth, and Fourteenth Amendment.  *Rock v. Ark.*, 483 U.S. 44, 51-52 (1987).  In addition, "only such basic decisions as to whether to . . . testify in one's own behalf are ultimately for the accused to make."  *Wainwright v. Sykes*, 433 U.S. 72, 93 n.1 (1977).  However, while Petitioner has not couched his

19

claim in ineffective assistance of counsel terms, when a petitioner argues that his attorney interfered with his right to testify, this Court applies the *Strickland* standard to ineffectiveness claims concerning the right to testify.  *See U.S. v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001).  But to begin to apply the *Strickland* standard, Petitioner must first show that counsel did in fact interfere with his right.  In other words, "although the ultimate decision whether to testify rests with the defendant, he is presumed to assent to his attorney's tactical decision not to have him testify." *U.S. v. Flores-Martinez*, 677 F.3d 699, 711 (5th Cir. 2012).

Here, Petitioner has not overcome the presumption that he assented to his attorney's decision not to have him testify.  To be sure, Petitioner's "failure to stand up in court and to insist on testifying is not dispositive of the issue whether he acquiesced in his attorney's decision that he not testify." *U.S. v. Araujo*, 77 Fed. Appx 276, 278 (5th Cir. 2003).  But, "a petitioner in a habeas proceeding cannot prevail on such a claim merely by stating to the habeas court that he told his trial attorney that he wished to testify and that his attorney forbade him from taking the witness stand." *Turcios v. Dretke*, 2005 WL 3263918, at *6 (S.D. Tex. Nov. 29, 2005).  Petitioner has not presented any specific evidence showing that trial counsel did anything that prevented him from exercising his constitutional right to testify.  The record is devoid of any showing that counsel refused to let him testify.  Petitioner's assertions fail to demonstrate the existence of any constitutional violation.  In sum, Petitioner's ineffective assistance of counsel claim on this basis is without merit.

Nevertheless, Petitioner contends that an evidentiary hearing will provide the necessary evidence to support his contention.  [doc. # 1, p. 41].  In *Underwood v. Clark*, 939 F.2d 473, 475-76 (7th Cir. 1991), the Seventh Circuit recognized that a Petitioner's claim that he told his trial

20

attorney he wished to testify and that his attorney forbade him from doing so

> is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary—and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify—to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.

Citing *Underwood*, the Fifth Circuit has

> observed that allowing a bare assertion of a right-to-testify violation to precipitate the further investment of judicial resources is problematic. See [Underwood, 939 F.2d at 476] ... (stating that a conclusory assertion by a defendant that his right to testify was denied him is insufficient to require a hearing because "[i]t just is too facile a tactic to be allowed to succeed"). We agree that there is "a grave practical difficulty in establishing a mechanism that will protect a criminal defendant's personal right ... to testify in his own behalf without rendering the criminal process unworkable."

*U.S. v. Martinez*, 181 F.3d 627, 628 (5th Cir. 1999).

In the instant matter, there is no evidence to support Petitioner's claim that his attorney prevented him from testifying.  Although Petitioner suggests that he asked to be allowed to testify, he has not presented any evidence to the state courts or to this court that might establish this fact.  Instead, the record shows that Petitioner must have acquiesced to what appears to have been the sound advice of counsel that he not testify.  The transcript is devoid of any discussion on the record by Petitioner or his counsel that Petitioner wished to testify or was advised against it.  Petitioner has had ample time and opportunity to pursue or file evidence to support his suggestion that counsel refused to let him testify.  Under these circumstances, it appears that no further opportunity to obtain such evidence need be provided by this court.  Petitioner can use the 14–day objection period following the entry of this report and recommendation to file such evidence if he has any, before his claim is dismissed with prejudice.  *See Davis v. Prince*, 2011 WL 5878155 (E.D. La.

2011).

For these reasons, Petitioner has not demonstrated any deficiency arising from counsel's performance.  He is not entitled to an evidentiary hearing, nor is he entitled to relief on this claim overall.

ii. Obtaining an Expert Witness to Testify

Next, Petitioner complains that counsel failed to obtain a qualified expert to testify about the adverse effects of PCP on different individuals.  [doc. # 1-1, p. 43].  Petitioner's claim is essentially one of uncalled witnesses.

Claims that counsel failed to call witnesses are not favored on federal *habeas* review because the presentation of witnesses is generally a matter of trial strategy, and speculation about what witnesses would have said on the stand is too uncertain.  *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).  For this reason, the Court requires petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by "nam[ing] the witness, demonstrat[ing] that the witness was available to testify and would have done so, set[ting] out the content of the witness's proposed testimony, and show[ing] that the testimony would have been favorable to a particular defense."  *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).  This requirement applies to both uncalled lay and expert witnesses.  *Id.* Moreover, the Fifth Circuit anticipates that a habeas petitioner will adduce affidavits to establish the content of a witness's proposed testimony and their willingness to testify.  *See Gray v. Epps*, 616 F.3d 436, 443 (5th Cir. 2010).

Petitioner has not complied with this requirement and instead offers only speculation regarding the possible testimony and benefits of an expert witness at trial.   He does not identify

any particular expert witness that could have been offered in support of his defense.[2]  Nor does Petitioner provide any affidavit or other credible means of knowing what testimony any expert might provide.  *Cf. Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007) ("Ordinarily, a defendant's failure to present some evidence from the uncalled witness regarding that witness's potential testimony and willingness to testify would be fatal.").  However, Petitioner has produced no evidence whatsoever, such as affidavits from the proposed witnesses, demonstrating that they would have testified in a manner beneficial to the defense.  Therefore, he clearly has not met his burden with respect to this claim.

Petitioner has not shown that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Petitioner's claim is without merit.

### iii. Obtaining Witnesses to Testify

Petitioner claims that trial counsel failed to investigate and secure the testimony of at least two witnesses who had knowledge that PCP was administered to Petitioner involuntarily. [doc. # 1-1, p. 45].  Specifically, Petitioner argues that trial counsel's decision not to call Erica Dorsey, Derrick Williams, Roderick Johnson, and Officer Stancil prejudiced Petitioner's defense.  *Id.* at 45-47.

Petitioner's claim is subject to the same standard outlined above in the Section entitled "Obtaining an Expert Witness to Testify."  But to elaborate on that standard, courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing

---

[2] The Court emphasizes that Dr. Marks is not a particular witness that could have testified in support of Petitioner's defense.  As noted above, Dr. Marks was not qualified to testify on the instant matter.

witness's testimony is from the defendant." *See, e.g., U.S. v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983). So too,  the Court cannot "speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses . . . ." *Buniff v. Cain,* 2011 WL 2669277, at *3 (E.D. La. July 7, 2011).

Here, Petitioner has not submitted any affidavits from his proposed witnesses.  He has not provided the Court with any credible means of knowing what testimony his proposed witnesses might have provided.  He has failed to provide any proof whatsoever showing that the proposed witnesses were available to testify at trial, that they would have testified, and that the testimony would have been favorable to his defense.  Having failed to do so, Petitioner cannot show prejudice.  Accordingly, Petitioner's claim of ineffective assistance of counsel on this ground lacks merit.

     iv. <u>Objecting to Comments Made by the Prosecution</u>

Petitioner claims that trial counsel failed to make timely objections to an alleged improper remark made by the prosecutor during rebuttal argument.  [doc. # 1-1, p. 47].  Petitioner alleges that counsel should have objected to the prosecutor's comment regarding Petitioner's failure to provide any evidence that his behavior on the date of the crime was bizarre.[3]  *Id.*

However, Petitioner's claim fails.  In *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990), the court made clear that counsel is not required to make futile objections.  As explained above in paragraph "C," the prosecutor did not commit any misconduct under clearly established federal law.  Rather, the prosecutor's  remark clearly focused on the defense's failure to explain how Petitioner's behavior constituted a departure from his normal behavior.  Because the prosecution

---

[3] The details of the prosecutor's comment are outlined above in Section "C."

24

did not commit any misconduct, Petitioner's counsel did not render ineffective assistance by failing to object to the prosecution's closing argument.  Stated differently, any objection to the prosecutor's remark would have been groundless.   Petitioner's claim is meritless.

v. Filing a Motion to Quash Based on Double Jeopardy Grounds

Petitioner argues that trial counsel was ineffective for failing to move to quash the bill of information based on the purported double jeopardy violation.  [doc. # 1-1, p. 48].

In *U.S. v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999), the court held that "an attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."  Here, as noted previously in paragraph "E" above, there was no double jeopardy violation.  Accordingly, any such motion to quash would have been meritless, and, therefore, counsel cannot be considered ineffective for failing to file it.  Petitioner's claim for relief on this ground is meritless.

vi. Ineffective Assistance of Appellate Counsel

Finally, Petitioner argues that his appellate counsel failed to argue, on direct appeal, that trial counsel was ineffective for failing to obtain a qualified expert, for failing to secure testimony of additional witnesses, for failing to object to the prosecution's remarks, and for failing to file a motion to quash counts two and four based on double jeopardy grounds.  [doc. # 1-1, p. 48].

To prove that appellate counsel was ineffective, a petitioner must satisfy the two-prong test enunciated in *Strickland*, supra, that counsel's performance was deficient and that the deficient performance prejudiced the defense.  *See Busby v. Dretke*, 359 F.3d 708, 714 (5th Cir. 2004).  A showing of prejudice requires that a petitioner show a reasonable probability that he would have

succeeded on appeal but for his counsel's deficient representation.  *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).  Here, as explained in this Report, all of Petitioner's claims are without merit, and thus he cannot show that appellate counsel was ineffective for failing to raise them on direct appeal.

In summary, Petitioner has failed to demonstrate that the state court decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, it is recommended that Petitioner's motion for *habeas* relief on the grounds of ineffective assistance of counsel be **DENIED.**

## CONCLUSION

For the reasons stated above, it is recommended that the Petition for relief be **DENIED**. Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL**

**FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Further, pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.**  See 28 U.S.C. § 2253(c)(2).  **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 4th day of September, 2013.


KAREN L. HAYES
U. S. MAGISTRATE JUDGE

27